BLUE DOT ENERGY COMPANY, INC., Plaintiff,

v.

The UNITED STATES, Defendant,

and

Waste Management of Washington, Inc., Defendant–Intervenor.

No. 04–644C.

United States Court of Federal Claims.

Filed Aug. 18, 2004.*

Opinion Originally Filed Under Seal on Aug. 18, 2004.

* This Memorandum Opinion Regarding Plaintiff's Standing and Order to Show Cause was filed under seal on August 18, 2004. The court has redacted any price and/or business confidential information subject to a Protective Order entered in this case on August 18, 2004. Brackets in bold herein denote where such information has been redacted by the court.

David J. Taylor, Tighe Patton Armstrong Teasdale, P.L.L.C., Washington, D.C., for plaintiff.

Kelly B. Weiss, United States Department of Justice, Washington, D.C., for defendant. Clarence D. Long, III, United States Air Force, Of Counsel.

William A. Shook, Preston Gates Ellis & Rouvelas Meeds, L.L.P., Washington, D.C., for defendant-intervenor.

## MEMORANDUM OPINION REGARDING PLAINTIFF'S STANDING AND ORDER TO SHOW CAUSE

BRADEN, Judge.

This post-award bid protest case presents what appears to be a simple jurisdictional issue:

Whether plaintiff has standing to protest the award of a sole-source contract by the Air Force, even though the plaintiff did not have a certificate of convenience and ne-

cessity required by state law to perform the contract?

The more important and controlling questions, however, are:

Whether the Air Force knowingly misconstrued and misapplied both federal and state statutes to avoid compliance with the congressionally established historically underutilized business zones program; and

Whether the state law at issue has been utilized in violation of federal antitrust laws?

The contract at issue concerns a $[ ] award that runs from April 1, 2004–September 30, 2004, as well as approximately $[ ] for four additional option years. *See* AR at 852, 856. The resolution of this case, however, has far ranging competitive significance, which one counsel for defendant-intervenor Waste Management of Washington, Inc. ("Waste Management–Washington"),[1] accurately has identified as whether:

---

1. Waste Management, Inc. is a Delaware corporation with its principal office in Houston, Texas. *See United States and State of Florida v. Waste Management, Inc.*, No. 1:03CV02076 (D.D.C. Oct. 14, 2003) (complaint issued under 15 U.S.C. §§ 18, 25 for injunctive relief to block the proposed acquisition of Allied Waste Industries, Inc. by Waste Management, Inc.) at ¶ 9. Waste Management, Inc. is the nation's largest waste hauling company, providing waste collection and disposal services throughout the United States. *Id.* In 2002, Waste Management, Inc. reported total revenues of approximately $11.1 billion. *Id.* Waste Management, Inc. is a holding company that conducts all of its operations through subsidiaries. *See* 2003 Waste Management, Inc. Annual Report at 32 (financial information at 1). Waste Management–Washington is one of those subsidiaries organized in 1999 under the laws of the State of Delaware.

It is a matter of public record that the Antitrust Division of the Department of Justice has filed four complaints during the period February 15, 1996 to October 14, 2003 in federal district courts alleging that Waste Management–Washington's parent and affiliated corporations in other states have engaged in actions that violated federal antitrust law, including monopolization in violation of the Sherman Act, 15 U.S.C. § 2. In three of these actions, State Attorneys General also were plaintiffs. *See United States v. Waste Management of Georgia, Inc., d/b/a Waste Management of Savannah, and Waste Management of Louisiana, Inc., d/b/a Waste Management of Central Louisiana, and Waste Management, Inc.*, No.

CV496–35 (S.D.Ga. Feb. 15, 1996) (complaint alleging monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, in small containerized hauling services in the states of Georgia and Louisiana); *United States, State of New York, Commonwealth of Pennsylvania, and State of Florida v. Waste Management, Inc., Ocho Acquisition Corp., and Eastern Environmental Services, Inc.*, No. 98CV1768–FB–MDG (E.D.N.Y. Nov. 17, 1998) (complaint alleging that the acquisition of Eastern Environmental Services Inc. will lessen competition substantially and tend to create a monopoly in violation of Section 7 of the Clayton Act, 15 U.S.C. § 7, in municipal solid waste in the states of New York, Pennsylvania, and Florida); *United States and State of New Jersey v. Waste Management, Inc., and Allied Waste Industries, Inc.*, No. 1:03CV01409 (D.D.C. June 27, 2003) (complaint alleging that the acquisition of Allied Waste Industries, Inc. will lessen competition substantially and tend to create a monopoly in violation of Section 7 of the Clayton Act, 15 U.S.C. § 7, in small container commercial waste collection service in Pitkin County, Colorado; Garfield County, Colorado; Augusta, Georgia; Myrtle Beach, South Carolina; Morris County, New Jersey; and Bergen and Passaic Counties, New Jersey and municipal solid waste in Bergen and Passaic Counties, New Jersey, and Tulsa and Muskogee, Oklahoma); *United States and State of Florida v. Waste Management, Inc.*, No. 1:03CV02076 (D.D.C. Oct. 14, 2003) (complaint alleging that the acquisition of Allied Waste Management Industries, Inc. will lessen competition substantially and tend to create a monopoly in violation of Section 7 of the

*Any federal facility* located in a territory for which Waste Management holds an *exclusive ... franchise right* is **required to use [Waste Management]** for solid waste collection services.

AR at 486 (emphasis added).

## RELEVANT FACTS AND PROCEDURAL BACKGROUND [2]

**A. 2002 Proceedings Before The Small Business Administration Concerning The Department Of Air Force's Solicitation F45613–02–Q–A027.**

On May 29, 2002, the Contracting Officer for the 92d Civil Engineer Squadron of the United States Air Force ("Air Force") issued Solicitation F45613–02–Q–A027 to procure recycling and solid waste management services for Fairchild Air Force Base in the State of Washington ("Fairchild AFB"). *See* AR at 1–18, 187. Solicitation F45613–02–Q–A027 was set-aside for companies that are located within historically underutilized business zones ("HUBZone"). *See* AR at 1–7; *see also* 15 U.S.C. § 632(p)(3). Although Blue Dot Energy Company, Inc. of Junction City, Kansas ("Blue Dot") was the incumbent and prime contractor on Contract No. F45613–01–D–A001, the Air Force decided not to renew the first option year, because it was not satisfied with Blue Dot's performance. *See* AR at 212–21, 234–35. Nevertheless, Blue Dot decided to bid on Solicitation F45613–02–Q–A027. *See* AR at 150–77.

Blue Dot and [ ] other firms submitted bids on Solicitation F45613–02–Q–A027. *See* AR at 234–36. The Government claims that Blue Dot submitted a technically marginal proposal and therefore was excluded from being a viable bidder. *See* Gov't Mot. to Dismiss at 5 (citing AR at 411–12); *see also*

Clayton Act, 15 U.S.C. § 7, in small container commercial hauling in Broward County, Florida).

**2.** The relevant facts recited herein are derived primarily from documents in the April 21, 2004 Administrative Record ("AR") which, at the request of the Government and concurrence of plaintiff, is subject to an April 19, 2004 protective order. Certain of these documents, however, are necessary to explain the rationale of this memorandum opinion. Therefore, the court has issued herewith an order amending the April 19, 2004

212–21, 234–35. On August 22, 2002, the Air Force informed Blue Dot that Olgoonik Logistics, L.L.C. ("Olgoonik") was awarded Contract No. F45613–02D–A001. *See* AR at 241, 303. Blue Dot filed a timely protest with the Small Business Administration ("SBA") challenging Olgoonik's status as a small business and as a qualified HUBZone business. *See* AR at 322–34. On September 26, 2002, the SBA ruled that Olgoonik was a HUBZone business, but agreed with Blue Dot that it was not a "small business," because it turns out that Olgoonik was affiliated with Waste Management–Washington. *See* AR at 329–32, 340. On November 22, 2002, the Air Force advised Blue Dot that the contract with Olgoonik would be terminated, however, Blue Dot would not be substituted as the awardee because its bid was "not 'number two' or the best value offeror, as their technical proposal and past performance ratings were only marginal." AR 411–12. On December 12, 2002, the Air Force terminated the contract with Olgoonik. *See* AR at 483–84, 511.

**B. 2002–2004 Proceedings Before The General Accounting Office Concerning The Department Of Air Force's Solicitations 45613–03–Q–A027 And 45613–03–Q–A028 And Sole–Source Solicitation No. FA5613–03–Q–A068.**

On November 18, 2002, Waste Management–Washington faxed the Air Force page one and page eighteen of an undated certificate of convenience and necessity, apparently issued by the Washington Utilities and Transportation Commission ("WUTC"), indicating that Waste Management–Washington had an exclusive license to collect solid waste in the Fairchild AFB area. *See* AR at 407–10.[3] Thereafter, the Air Force awarded Waste Management–Washington a "short-

protective order to place those documents on the public record. Herein, the court has deleted specific price information and any business information which legitimately is of a confidential nature.

**3.** On December 14, 1999, Washington Waste Hauling & Recycling, Inc. of Kirkland, Washington was issued a certificate of convenience and necessity by the WUTC. *See* AR 489–510. This certification, however, "was obtained by transfer of Certificate No. G–140 from Waste Manage-

term" sole-source contract for the period March 1, 2003–September 30, 2003. *See* AR at 565–66.

On December 2, 2002, Blue Dot filed a protest with the General Accounting Office ("GAO") challenging the Air Force's decision to cancel Solicitation 45613–03–Q–A027 and allow Olgoonik to continue to perform, rather than awarding the contract to Blue Dot. *See* AR at 414–23. On December 20, 2002, the Air Force requested that Blue Dot's protest be denied because Waste Management–Washington was the only company that possessed the certificate of convenience and necessity required under Washington state law to perform services required under the contract. *See* AR at 569–75. On February 13, 2003, the GAO dismissed Blue Dot's protest because the Air Force agreed to re-solicit the contract to HUBZone companies, rather than entering a sole-source contract with Waste Management–Washington. *See* AR at 679–80.

On March 13, 2003, the Air Force issued a pre-solicitation notice for HUBZone companies, but Waste Management filed a protest with the GAO. *See* AR at 688, 690–94. On May 27, 2003, GAO dismissed Waste Management–Washington's protest as premature because the solicitation had not been issued. *See* AR at 709–14. On June 19, 2003, the Air Force issued a pre-solicitation notice for a solid waste collection and disposal Contract No. F45613–03–Q–A028 and indicated that it was a HUBZone set-aside. *See* AR at 716–18; *see also* 48 C.F.R. § 19.1305(a). On July 23, 2003, the Air Force issued Solicitation F45613–03–Q–A028 for HUBZone qualified companies. *See* AR at 719–46. Again, Waste Management protested. *See* AR at 747–54. On August 6, 2003, the Air Force announced

that it was taking "corrective action" by canceling the pre-solicitation and suspending the due date. *See* AR at 756, 758. Waste Management–Washington then withdrew its protest. *See* AR at 759.

On September 22, 2003, the Air Force cancelled Solicitation No. F45613–03–Q–A028 and issued a pre-solicitation notice No. F45613–03–Q–A068 announcing that it intended to sole-source the solid waste collection and disposal services contract to Waste Management–Washington. *See* AR at 764–65. On December 2, 2003, the Air Force issued a "modification" to the pre-solicitation notice requiring that the awardee have a certificate of convenience and necessity issued pursuant to Wash. Rev.Code § 81.77.040. *See* AR at 772–73. On December 18, 2003, the Air Force awarded a sole-source solicitation to Waste Management–Washington. *See* AR at 779–820. On December 29, 2003, Blue Dot filed a protest with GAO arguing that Solicitation F45613–03–Q–A068 was not awarded in compliance with the requirements of the HUBZone set-aside. *See* AR at 779–80, 829–35. On March 1, 2004, the GAO dismissed Blue Dot's protest as untimely. *See* AR at 846–48.[4] On March 24, 2004, Waste Management–Washington was awarded Contract No. FA4620–04–D–A2003, based on Solicitation F45613–03–Q–A068, to provide solid waste collection and disposal services for Fairchild AFB. *See* AR at 850. Waste Management–Washington commenced performance on April 1, 2004. *See* AR at 857, 884.

## C. Proceedings Before The United States Court Of Federal Claims.

On April 12, 2004, Blue Dot filed a complaint in the United States Court of Federal

---

ment of Seattle, Inc., d/b/a Waste Management of Ellensburg/Waste Management of Kennewick." *See* AR at 408, 489.

This appears to be the predecessor certificate of convenience and necessity issued to Waste Management–Washington, which also appears as well to apply to a number of other Waste Management–Washington related companies d/b/a: Washington Waste Hauling & Recycling Inc.; Recycle America; Rural Skagit Sanitation; Federal Way Disposal; Nick Raffo Garbage; R.S.T. Disposal; Tri–Star Disposal; Western Refuse; North Cascade Disposal; Stanwood Camano Disposal; Waste Management; Waste Management–Northwest; Waste Management–Rainier; Waste

Management of Ellensburg; Waste Management of Greater Wenatchee; Waste Management of Kennewick; Waste Management of Seattle; Waste Management of Skagit County; Waste Management of Spokane; Waste Management of Yakima; Waste Management of Sno–King; Valley Garbage Service; and Olson's Sanitation Service. *See* AR at 408.

**4.** Blue Dot was required to protest Solicitation 45613–03–Q–A028 within 10 days after the basis of the protest was known or should have been known, *i.e.*, the date of the pre-solicitation notice issued on September 22, 2003. *See* AR at 848; *see also* 4 C.F.R. § 21.2(a)(2) (2004).

Claims alleging a "violation of statute and regulation [and] arbitrary and capricious action by [a] contracting officer." Compl. (Count I). In this court, Blue Dot seeks: "preliminary and permanent injunctions enjoining the Air Force from awarding a sole-source contract to Waste Management, Inc.," *see* Compl. ¶ 1 (Prayer for Relief); and an "[o]rder that the Air Force award the contract to Blue Dot Energy Company," *see* Compl. ¶ 3 (Prayer for Relief), or an "order that the solicitation be re-opened and that the procurement be set-aside for HUBZone small business concerns only." *See* Compl. ¶ 4 (Prayer for Relief).

On April 20, 2003, Waste Management–Washington filed a motion to appear as defendant-intervenor in this case. On April 21, 2004 the Administrative Record was filed with the court. A telephone status conference was convened by the court on April 22, 2004, at which time the parties agreed to first address the issue of standing. During that conference, the court orally granted Waste Management's motion to intervene, which was confirmed by a written order on April 27, 2004.

On May 3, 2004, the defendant ("the Government") filed a motion to dismiss, pursuant to RCFC 12(b)(1). On May 18, 2004, Waste Management–Washington filed a "supplement" to the Government's motion to dismiss. On May 27, 2004, Blue Dot filed a response. On June 14, 2004, the Government filed a reply. On July 1, 2004, Blue Dot filed a notice of supplemental filing. The Government filed a response on July 19, 2004.[5]

### DISCUSSION

### A. Jurisdiction.

Pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub.L. No. 104–320 § 12, 110 Stat. 3870, 3874–75 (1996), the United States Court of Federal Claims has "jurisdiction to render judgment on an action by an interest-

---

5. All of these documents were filed under seal. The court has determined that none of the information and legal analysis therein requires confidential treatment other than certain information

ed party *objecting to a solicitation by a Federal agency* for bids or proposals for a proposed contract or to a proposed award ... or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); *see also Khan v. United States,* 201 F.3d 1375, 1377 (Fed.Cir.2000) (requiring the plaintiff to identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages for the court to have jurisdiction).

The court has determined that Blue Dot's complaint properly alleges a claim over which the court has jurisdiction. *See* Compl. at ¶¶ 4, 34–42.

### B. The Requirements Of Article III Standing.

The lower federal courts have been advised to "decide standing questions at the outset of a case. That order of decision (first jurisdiction then the merits) helps better to restrict the use of the federal courts to those adversarial disputes that Article III defines as the federal judiciary's business." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 111, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (Breyer, J. concurring). As the party invoking federal jurisdiction, the plaintiff has the burden of proof and persuasion to satisfy the constitutional requirements of Article III standing. *See FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

### C. Relevant Standards Of Review.

### 1. RCFC 12(b)(1)-Motion To Dismiss.

The court must grant a motion to dismiss for lack of subject matter jurisdiction when plaintiff "can prove no set of facts in support of [the] claim which would entitle [plaintiff] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Although the court is required to assume non-

---

on pages 5 (lines 2 and 5) and 9 (lines 10 and 12) of the Government's May 3, 2004 motion to dismiss.

jurisdictional factual allegations to be true, the burden of establishing subject matter jurisdiction rests with plaintiff. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). When deciding a motion to dismiss for lack of subject matter jurisdiction, pursuant to RCFC 12(b)(1), the court may examine relevant evidence in order to resolve any factual disputes. *See, e.g., Moyer v. United States*, 190 F.3d 1314, 1318 (Fed.Cir.1999); *Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed.Cir.1993), *cert. denied sub nom., Cedars–Sinai Med. Ctr. v. O'Leary*, 512 U.S. 1235, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994).

### 2. The "Substantial Chance" Standing Test Applies To A Post–Award Bid Protest.

■ The United States Court of Appeals for the Federal Circuit also has held that in bid protest cases "because the question of prejudice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits." *Information Tech.*, 316 F.3d at 1319. To establish prejudice, a plaintiff must show that "absent the error, 'there was a substantial chance it would have received the contract award.'" *Emery Worldwide*, 264 F.3d at 1086 (quoting *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed.Cir. 1999)); *see also Guilford Gravure, Inc. v. United States*, 365 F.3d 1345, 1351 (Fed.Cir. 2004) (post-award bid case); *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed.Cir. 1996) ("To establish competitive prejudice, a protestor must demonstrate that but for the alleged error, there was a *substantial chance* that [it] would receive an award—that it was within the zone of active consideration.") (internal citations omitted).

■ In addition, our appellate court requires, "[w]hen a party contends that the procurement procedure in a sole-source case involved a violation of a statute, regulation, or procedure, it must establish prejudice by showing that it would have had a substantial chance of receiving the award." *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1370 (Fed.Cir.2002) (quoting *Statistica Inc.*, 102 F.3d at 1582).

Panels of the United States Court of Appeals for the Federal Circuit, however, have taken different approaches to what is required to evidence a "substantial chance." *Compare Information Tech.*, 316 F.3d at 1319 (a protestor must establish "that its chance of winning the award was 'greater than ... insubstantial ... if successful on the merits of the bid protest.'"); *Data General Corp. v. Johnson*, 78 F.3d 1556, 1562–63 (Fed.Cir.1996) (holding "the appropriate standard is that, to establish prejudice, a protestor must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protestor would have been awarded the contract. This is a refinement and clarification of the 'substantial chance' language[.]") *with United States v. Int'l Bus. Machines Corp.*, 892 F.2d 1006, 1011 (Fed.Cir.1990) ("[O]nly the second-lowest bidder has a direct economic interest in the award of the contract. Therefore, only the second-lowest bidder is an interested party entitled to protest the award of the contract, ... because only it stands to receive the contract in lieu of the challenged awardee[.]") (internal citation omitted).

### D. Resolution Of The Government's Motion To Dismiss.

#### 1. Blue Dot's Complaint Is A Post–Award Bid Protest.

On March 24, 2004, the Air Force executed a sole-source contract with Waste Management–Washington for "solid waste management services" at Fairchild AFB. *See* AR at 850. Blue Dot did not file suit in this court until April 12, 2004, after the contract had already been awarded. *See Coco Bros., Inc. v. Pierce*, 741 F.2d 675, 677 (3d Cir.1984) (holding bid protest suits filed after a written notice has been sent to the contract recipient are post-award protests); *see also Advanced Seal Technology, Inc. v. Perry*, 873 F.Supp. 1144, 1149 (N.D.Ill.1995) (determining that the claim was post-award since it was filed one month after contract was awarded and plaintiff was seeking solely equitable relief). Therefore, despite plaintiff's allegation to the contrary, *see* Compl. at 1, this case concerns a post-award protest.

### 2. Blue Dot's Standing Should Not Be Resolved On A Motion To Dismiss.

■ Since standing inherently concerns facts relevant to the particulars of a case, it is more appropriately resolved at the summary judgment stage, as the United States Supreme Court instructed in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992):

> [plaintiff must] "set forth" by affidavit or other evidence "specific facts," Fed. Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true ... When the suit is one challenging the legality of government action ... the nature and extent of facts must be averred (at the summary judgment stage) ... in order to establish standing depends considerably upon whether the plaintiff is ... an object of the action ... at issue. If [so], there is ordinarily little question that the action ... has caused him injury, and that a judgment ... requiring the action will redress it. When, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation ... of *someone else,* much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated ... third party to the government action .... Thus, when the plaintiff is not ... the object of the government action ... standing is not precluded, but is ordinarily "substantially more difficult" to establish.

*Id.* at 561–62, 112 S.Ct. 2130.

Likewise, the United States Court of Appeals for the Federal Circuit has examined plaintiff's standing, either in the context of reviewing a final decision on the merits or on a motion for summary judgment, but not on a motion to dismiss. *See, e.g., Information Technology & Applications Corporation v. United States,* 316 F.3d 1312, 1319 (Fed.Cir. 2003) (standing determined on summary judgment); *Emery Worldwide Airlines, Inc. v. United States,* 264 F.3d 1071, 1086–88 n. 14 (Fed.Cir.2001) (same); *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1333–34 (Fed.Cir.2001) (same). Therefore, Blue Dot's standing

should not be resolved on a motion to dismiss, pursuant to RCFC 12(b)(1).

### 3. The Parties Are Ordered To Show Cause Why The Court Should Not Rule That Blue Dot Has A "Substantial Chance" of Receiving Contract No. FA4620–04–D's Option Years, Since The Air Force Has Admitted That Its Interpretation Of 42 U.S.C. § 6961(a) And Wash. Rev.Code § 81.77.040 Knowingly Was Contrary To Law.

■ On December 10, 2003, the Air Force issued a "REVISED/FINAL JUSTIFICATION AND APPROVAL FOR OTHER THAN FULL AND OPEN COMPETITION" ("FINAL JUSTIFICATION") regarding a "new contract for solid waste and disposal service [to] be awarded on a restrictive basis to Waste Management of WA[.]" AR at 774. The FINAL JUSTIFICATION states at "Section 5 DEMONSTRATION THAT THE CONTRACTOR'S UNIQUE QUALIFICATIONS OR NATURE OF THE ACQUISITION REQUIRES THE USE OF ONLY ONE RESPONSIBLE SOURCE AUTHORITY:"

> Under Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. § 6961 (Application of Federal, State, and local law to Federal facilities), federal agencies must comply with local solid waste management regulations. As such, exclusive franchise agreements, certificates, or authority granted by a state, county, or municipality to an entity prevents federal agencies from competing the contract requirements. The WUTC has the authority to grant companies certificates of public convenience and necessity, which grant them authority to operate solid waste collection services within a prescribed geographic area. Waste Management holds Certificate No. G–156 dated 12–14–99 for the area surrounding and including Fairchild AFB. In matter of: *Red River Service Corporation,* B–279250, May. 26, 1998, 98–1 Comp. Gen. Proc. Dec. P142, at footnote 2[, 1998 WL 267083], GAO specifically held that RCRA was an express requirement under 10 U.S.C. § 2304(c)(5). Although GAO cited 10 U.S.C. § 2304(c)(5),

that authority does not identify the specific entity involved. Therefore, we are using 10 U.S.C. § 2304(c)(1) as the statutory authority for this procurement.

AR at 775.

RCRA requires that all federal agencies "engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste shall be subject to, and comply with, all Federal, State, interstate and local requirements, both substantiative and procedural (including any requirement for permits[.])" 42 U.S.C. § 6961(a).

In 1961, the State of Washington enacted a law providing that:

> [n]o solid waste collection company shall hereafter operate for the hauling of solid waste for compensation without first having obtained from the commission a certificate declaring that public convenience and necessity require such operation[.] ... Issuance of the certificate of necessity shall be determined upon, but not limited to, the following factors: The present service and cost thereof for the contemplated area to be served; an estimate of the cost of the facilities to be utilized in the plant for solid waste collection and disposal; ... a statement of prior experience, if any, in such field by the petitioner; ... and sentiment in the community contemplated to be served as to the necessity for such a service.

Wash. Rev.Code § 81.77.040 (1996) (emphasis added).

The court is informed that, as of March 24, 2004, the date the contract at issue was awarded in this case, Waste Management–Washington was the only company that had a certificate of convenience and necessity to operate at the Fairchild AFB and adjacent area. See AR at 408–10.

There is no language in 42 U.S.C. § 6961(a) or Wash. Rev.Code § 81.77.040 which mandates that a federal agency must

solicit bids only from or award a contract exclusively to a solid waste disposal contractor with a WUTC certification. Indeed, such a requirement would violate the Competition in Contracting Act, 10 U.S.C. § 2305(b)(3) (requiring award of federal contracts "to the responsible bidder whose bid *conforms* to the solicitation and is most *advantageous* to the United States, *considering only price* and other price-related factors included in the solicitation[.]") (emphasis added). The legal duties imposed by Wash. Rev.Code § 81.77.040 apply exclusively to solid waste contractors and require only that a certificate of convenience and necessity be obtained and in hand at the time solid waste hauling commences operation. See Wash. Rev.Code § 81.77.040 ("[n]o solid waste company shall hereafter *operate.*") (emphasis added).

The United States Court of Appeals for the Federal Circuit has held that if a "bid protest were allowed because of an arbitrary and capricious responsibility determination by the contracting officer, the government would be obligated to rebid the contract, and [the challenging bidder] could compete for the contract once again. Under these circumstances, the [challenging bidder] has a 'substantial chance' of receiving the award and an economic interest and has standing to challenge the award." *Impresa*, 238 F.3d at 1334 (citing *Alfa Laval*, 175 F.3d at 1367). In this case, the Air Force has admitted that its interpretation of 42 U.S.C. § 6961(a) and Wash. Rev.Code § 81.77.040 (1996) knowingly was contrary to law. See AR at 757 ("Fairchild AFB agrees with Waste Management's position [that] *under RCRA, the contracting agency is required to use only Waste Management* for solid waste disposal ... This conclusion holds even though it conflicts with the Federal Acquisition Regulations (FAR), most specifically subpart 19.5, as well as the full and open competition requirements of the Competition in Contracting Act of 1984 (CICA).") (emphasis added). See AR at 235.[6] Therefore, under

---

**6.** Solicitation F45613–03–Q–A028 stated that the contract would be awarded as a "competitive best value acquisition in which competing offeror's past and present performance history will be evaluated on a basis significantly more important than cost or price consideration." AR at 735.

Although Blue Dot received a "marginal" overall performance rating for the period December 1, 2001–March 2002, almost all of the negative comments concerned the recycling center. See AR at 213–16, 218, 235 ("Although the refuse collection (subcontracted to Waste Management)

these circumstances, the parties are hereby ordered to show cause why the court should not rule that Blue Dot has a substantial chance of receiving Contract No. FA4620–04–D's option years commencing on September 30, 2004, particularly since Blue Dot submitted the [ ] on Solicitation F45613–02–Q–A027.

### 4. The Parties Are Ordered to Show Cause Why The Court Should Not Rule That Blue Dot Has A "Substantial Chance" Of Obtaining Contract No. FA46020–02–04–D's Option Years, Since Wash. Rev.Code § 81.77.040 Has Been Utilized In Violation Of Federal Antitrust Law.

■■ In *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the United States Supreme Court held that a statute enacted by a state legislature is exempt from federal antitrust scrutiny under the "state action doctrine," based on principles of federalism and state sovereignty. *Id.* at 351, 63 S.Ct. 307. In *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), however, a unanimous Court established a two-part test to clarify that state action antitrust immunity is not absolute. In determining the applicability of the doctrine the state regulation must be " 'clearly articulated and affirmatively expressed as state policy;' " second, the policy must be " 'actively supervised' " by the state. *Id.* at 105, 100 S.Ct. 937 (quoting *City of Lafayette v. Louisiana*

*Power & Light Co.*, 435 U.S. 389, 410, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978)). More recently, in *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 112 S.Ct. 2169, 119 L.Ed.2d 410 (1992), the United States Supreme Court provided detailed guidance as to what is expected from the state to demonstrate the active supervision requirement:

> [T]he purpose of the active supervision inquiry is not to determine whether the State has met some normative standard, such as efficiency, in its regulatory practices. Its purpose is to determine whether the State has exercised sufficient independent judgment and control so that the details of the rates or prices have been established as a product of deliberate state intervention, not simply by agreement among private parties. Much as in causation inquiries, the analysis asks whether the State has played a substantial role in determining the specifics of the economic policy. The question is not how well state regulation works but whether the anticompetitive scheme is the State's own.

*Id.* at 634–35, 112 S.Ct. 2169.

On its face, Wash. Rev.Code § 81.77.040 does not include a "clearly articulated and affirmatively expressed state policy" to displace competition with what in effect are geographic franchises that appear to have been granted in perpetuity. *See* AR at 625–26 ("[T]he commission ... may issue the requested certificate only if the existing solid

---

is acceptable, their [Blue Dot's] overall performance rating is marginal."). On January 9, 2002, Blue Dot received a "cure notice." *See* AR at 219–21. The Integrated Assessment Best Value Decision for F45613–02–Q–A027 indicates that "[Blue Dot's] Improvement to the recycling center operation did not occur until 7 months into the contract performance, when a new management team assumed control." AR at 235. In addition, the Contracting Officer notes that Blue Dot received a satisfactory rating for refuse removal at McConnell AFB in Kansas and a very good rating for refuse removal from the Veterans Medical and Regional Office in Kansas. *See* AR at 235. The Contracting Officer, however, appears completely to have disregarded these favorable ratings, as well as Blue Dot's efforts to cure prior problems, in evaluating Blue Dot's performance history. *Id.*

Waste Management–Washington also argues that Blue Dot cannot satisfy the "responsible

prospective contractor" requirements of the Competition in Contracting Act, 10 U.S.C. § 2305(b)(3)(4) and 48 C.F.R. § 9.103(a), (b), because Blue Dot does not have sufficient financial resources to perform the contract, evidenced by its apparent failure to satisfy a $261,326.32 judgment owed to Waste Management–Washington for subcontracting work. *See* Def.-Intervenor's Supp. at 4–5. The court is unable to discern from the record or briefs filed to date whether that judgment is final or subject to appeal or whether it concerned any of the services that were the primary focus of the Air Force's "marginal" performance rating regarding Blue Dot. The court notes that in evaluating Blue Dot's August 2, 2002 bid on F45613–02–Q–A027, however, the Contracting Officer did not indicate any concern about Blue Dot's financial ability to perform the contract. *See* AR at 234–35.

waste collection company 'will not' provide service to the satisfaction of the commission.") In addition, the "sentiment of the community" standard in Wash. Rev.Code § 81.77.040, required before a second certificate will be issued within a geographic area appears to be sufficiently vague and arbitrary as to give rise to due process concerns under both federal and state constitutional law. Moreover, the record is devoid of any evidence that the state "has exercised sufficient independent judgment and control" over rates and prices, despite the Government's unsupported assertion that "WUTC strictly regulates solid waste collection companies, establishes rates and tariffs, requires compliance with local solid waste management plans, and monitors company performance." Gov't Mot. to Dismiss at 19. The fact that Blue Dot apparently was performing such work at Fairchild AFB under a prior contract without a certification best evidences that the state clearly does not "strictly regulate[ ] solid waste collection companies." *Id.* This apparent lack of active supervision is further evidenced by the fact that the certifications appear to be transferred from one company or related companies to another in perpetuity without any due diligence or significant inquiry. *See* AR at 407–10, 489.[7] Thus, the proposition that WUTC "supervises and regulates every solid waste collection company in the state of Washington by fixing and altering its rates and charges ... to use rate structures and billing systems consistent with local solid waste management priorities and plans" is an issue that is far from resolved to the court's satisfaction in this case. *See* AR at 768.

For example, the Air Force's December 10, 2003 FINAL JUSTIFICATION regarding Contract No. FA4620–04–D provides:

> It is anticipated that the *cost of the contract will be fair and reasonable.* Waste Management has performed solid waste collection and disposal at Fairchild AFB as the prime contractor from FY 97 through FY 01 and in FY 03, and also as a subcontractor in FY 02 and FY 03. The costs have remained relatively stable through competitive bidding from FY 97 through the award to Olgoonik in August 2002. In February 2003 when the sole source, seven (7) month, contract was awarded to Waste Management, the price was *determined fair and reasonable through price analysis comparing Waste Management prices with Olgoonik,* which was a competitive bid contract. Waste Management's prices in FY 03 [were] also compared to the then current Tariff Agreement No. 13 rates. The prices being charged by Waste Management for this short-term contract were actually lower [than] the allowable rates reflected in Tariff (allowable rates as reflected in the Tariff are actual costs plus a profit of 5 to 7%). Waste Management's prices for this sole source acquisition will be compared not only to past CLIN pricing, but also to the now current Tariff No. 14 rates *to ensure the Government is receiving a fair and reasonable price.* The costs Fairchild has paid for bulk containers per ton and collection of refuse costs per unit since FY 97 are illustrated in the following table:

7. *See* Timothy H. Butler, 23 Wash. Prac. Environmental Law and Practice § 13.22 (updated 2003 Pocket Part) ("The solid waste collection law [Wash. Rev.Code § 81.77.040] creates a regulated monopoly, in which only one certificate holder can serve a given territory, *unless the existing carrier will not serve to the satisfaction of WUTC.* This explains why so few certificates have been issued and why entry applications generally result in hotly-contested hearings.") (emphasis added).

| | WM | WM | WM | WM | WM | Blue Dot | Olgoonik | WM [8] |
|---|---|---|---|---|---|---|---|---|
| | FY97 | FY98 | FY99 | FY00 | FY01 | FY02 | FY03 (5 Month) | FY03 (7 month) |
| Bulk containers Price/ton | $[ ] | $[ ] | $[ ] | $[ ] | $[ ] | $[ ] | $[ ] | $[ ] |
| Housing price/ unit/month | $[ ] | $[ ] | $[ ] | $[ ] | $[ ] | $[ ] | $[ ] | $[ ] |

AR at 776 (emphasis added).

The Air Force's due diligence comparing Waste Management's prices with Olgoonik's to determine whether they were "fair and reasonable" is plainly arbitrary and capricious—they are the same company, as the Air Force well knows. *See* AR at 483–84, 511. Second, a comparison of the base year with option years 1–4 does not evidence that the "cost of the contract [is] fair and reasonable." AR at 776. The cost for the estimated base year April 1, 2004–September 30, 2004 is $[ ]. For October 1, 2004–September 30, 2005, however, the cost is estimated at $[ ], or an increase of [ ]%, for one year, even though the unit increase is only approximately 51%. *Id.* Moreover, although the unit requirements remain essentially the same in the following three years, an additional price increase is built in for each year:

October 1, 2005–September 30, 2006—$[ ];

October 1, 2006–September 30, 2007—$[ ]; and

October 1, 2007–September 30, 2008—$[ ].

*Id.* Therefore, the parties are ordered to show cause why the court should not rule that Wash. Rev.Code § 81.77.040 has been utilized in violation of 15 U.S.C. § 2 under the circumstances presented in this case. *See* 28 U.S.C. § 1491(b)(1) ("[T]he United States Court of Federal Claims ... shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or *any alleged violation of statute* ... in connection with a procurement or the proposed procurement.") (emphasis added).

**5. The Parties Are Ordered To Show Cause Why The Court Should Not Enjoin The Air Force From Awarding Waste Management–Washington Option Years 1–4 On Contract No. FA4620–04–D–A2003, But Instead Be Required To Re-Solicit The Contract.**

In light of the fact that the Air Force appears knowingly to have interpreted 42 U.S.C. § 6961(a) and Wash Rev.Code § 81.77.040 contrary to law, Wash. Rev.Code § 81.77.040 appears to have been used to violate federal antitrust law, and Waste Management–Washington appears to be on the verge of imposing monopoly rents on the public, albeit with the approval of the Air Force, the parties are hereby ordered to show cause why the court should not enjoin the Air Force from awarding Waste Management–Washington option years 1–4 on Contract No. FA4620–04–D–A2003, but instead be required to re-solicit the contract.

The parties' briefs are due to be filed no later than the close of business September 13, 2004. Such briefs will be filed on the public record, unless the sponsoring party files a motion for a protective order and can demonstrate that the information is appropriate for the entry of such an order. *See, e.g.,* 28 C.F.R. § 50.9 (Department of Justice Policy with Regard to Open Judicial Proceedings). A hearing will be conducted on September 17, 2004 at 10:00 a.m. EDT, at the United States Court of Federal Claims, 717 Madison Place, N.W., Washington, D.C., 20005, at which time the court will entertain oral argument and the proffering of testimony or other relevant evidence.

In addition, the Clerk of the Court will serve the following entities with a copy of this Memorandum Opinion Regarding Plaintiff's Standing and Order to Show Cause,

8. The Air Force admits: "The bulk container price per ton reflects a significant increase for the current contract between 2002 and 2003[, *i.e.,* [ ]%]. A price fair and reasonable determina-

tion was accomplished on 27 January 2003 that identifies the cause for this increase. The factors included increases in disposal fees, labor, materi-

together with notice of the above-referenced deadlines, in the event they may wish to participate as an intervenor or *amicus:*

International Resource Recovery, Inc.[9]
Selrico Services [10]
SI–NOR [11]
Robert S. Paccine, Area Director
U.S. Small Business Administration
Office of General Contracting–Area VI
455 Market Street, 6th Floor
San Francisco, California 94105
David Jaudon, General Counsel
John W. Klein, Associate Counsel
U.S. Small Business Administration
409 Third Street, S.W.
Washington, D.C. 20416–0005
The Honorable H. Hewitt Pate, Assistant Attorney General
Antitrust Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530–0001
J. Robert Kramer, II, Chief, Litigation II Section
Antitrust Division
U.S. Department of Justice
1401 H Street, N.W.
Suite 3000
Washington, D.C. 20530
The Honorable Christine O. Gregoire
Attorney General
State of Washington
1125 Washington Street, S.E.
P.O. Box 40100
Olympia, Washington 98504–0100
Tina Kondo
Antitrust Division Chief and Senior Assistant Attorney General
Office of the Attorney General
900 Fourth Avenue, Suite 2000
MS TB 14
Seattle, Washington 98164–1012

als, equipment; and increases in cost of purchasing dumpsters." AR at 768.

9. The Government is hereby ordered to provide the Clerk of the Court with the name of the CEO and address of this potential bidder. The Clerk will *only* serve a copy of the *published version* of this memorandum opinion on this company.

10. The Government is hereby ordered to provide the Clerk of the Court with the name of the CEO and address of this potential bidder. The Clerk will *only* serve a copy of the *published version* of this memorandum opinion on this company.

11. The Government is hereby ordered to provide the Clerk of the Court with the name of the CEO

## CONCLUSION

For the foregoing reasons, the Government's May 3, 2004 motion to dismiss, pursuant to RCFC 12(b)(1), is denied. The Clerk of the Court is hereby instructed to enter an order consistent with the court's show cause order and related rulings herein.

**IT IS SO ORDERED.**