KOLA NUT TRAVEL, INC., Manassas Travel Inc., and Knowledge Connections Travel Inc., Plaintiffs,

v.

The UNITED STATES, Defendant,

and

Alamo Travel Group, Inc., Ravenel Brothers, Inc., Winggate Travel, Inc., and Airtrak Travel Systems, Inc., Intervenors.

No. 05–1027C.

United States Court of Federal Claims.

Oct. 19, 2005.

Bryant S. Banes, Law Office of Bryant S. Banes, PLLC, Houston, TX, for Plaintiffs.

James Poirier, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and William F. Ryan, Assistant Director, all of Washington, D.C., for Defendant.

Josephine L. Ursini, Law Offices of Josephine L. Ursini, Virginia Beach, VA, for Intervenors.

### Opinion and Order

SMITH, Senior Judge.

Plaintiffs bring this post-award bid protest alleging violations of the Federal Acquisition Regulations (FAR). Plaintiffs are before the Court seeking preliminary[1] injunctive relief that would prevent the transfer of travel contracts to the Awardee–Intervenors. For the reasons set forth below, the Court **DENIES** the Plaintiffs' Motion for Temporary Injunctive Relief.

**Factual Background**

Up until the early 2000's, the Department of Defense (DoD) issued solicitations for travel contracts on a base-by-base basis, although some bases were combined with a few others on some contracts. *Int. Am. Br.* 1. The DoD found problems in the procurement and sought to create the Defense Travel System (DTS) to streamline the travel process for military personnel and simplify the management of DoD travel in general. As part of DTS, the DoD consolidated all of its travel contracts into one omnibus solicitation. *Id.* In November 2002, the DoD issued its initial omnibus solicitation, which exceeded 2,400 pages. *Id.* at 1–2. This Request for Proposals (RFP) divided the country into Travel Areas (TA), some of which were restricted to small business and some were not. *Id.* at 1. In response to numerous protests, DoD re-solicited the small business procurements separately from unrestricted TA's, but again in an omnibus solicitation that combined Military Entrance Processing Stations (MEPS)[2] and non-MEPS sites. *Id.* at 2. Successful protests were filed in the General Accounting Office (GAO), causing the DoD to split the small business solicitation into MEPS and non-MEPS sites. *Id.; AirTrak Travel,* B–292101, B–292101.2, B–292101.3, B–292101.4, B–292101.5, 2003 WL 21499653 (June 30, 2003). On February 13, 2004, the DoD issued two RFPs—W91QUZ–04–R–003 (non-MEPS) and W91QUZ–04–R–0007 (MEPS)—that are being protested here. *Def.'s App.* 1–11. It is undisputed that the DoD failed to insert required language into the contracts awarded to Intervenors and failed to require *any* of the offerors to submit a Certificate of Independent Pricing Determination (CIPD) as required by FAR 3.103–2 before contract award. It is further not disputed that the Intervenors each submitted CIPDs on September 28, 2005. *Int. App.* 92–95.

Many of the offerors used consultants to prepare bids due to the complexity of the

**1.** Although presented in briefing as a "Motion for Temporary Injunctive Relief," the Plaintiffs clarified at the outset of oral argument that they were, in fact, seeking preliminary injunctive relief. *TRO Hr'g Tr.* 5, Oct. 6, 2005.

**2.** Military Entrance Processing Stations are where new recruits are processed and then sent out to basic training. These sites pose significant challenges to travel service providers because the travel involves large groups of recruits and is highly seasonal in nature.

solicitation. *Int. Am. Br.* 2–3. Plaintiffs allege that the Awardees (Intervenors) all hired Mr. Alvin Chisik as a consultant and that, through him, they collusively bid in violation of FAR and the RFPs. *Compl.* ¶ 23. Mr. Chisik had participated in the DTS "test project," which Plaintiffs argue created a conflict of interest. *Id.* It is clear, however, that many other people participated in the tests other than Mr. Chisik, and there is no evidence in the record of improper conduct. *Def.'s Br.* 16–17; *Int. Am. Br.* 4 (listing SBA Size Protests regarding this procurement).

There have been at least fifteen protests filed[3] in the GAO and the Small Business Administration (SBA) since the award of this contract, mostly dealing with Mr. Chisik's involvement with the Intervenors. *Int. Am. Br.* 4. Of these, fourteen have been decided against the protestors and the fifteenth is still pending. *See id.* A disappointed bidder—Alexander Travel—subsequently submitted the "Report of Significant Procurement Fraud Irregularity in the Defense Travel Services ITEC–4 Small Business Procurements Involving Master Solicitation No. W91QUZ." (Alexander Report) *Compl.* ¶ 11; *Compl. Attach. B, Encl. 1.* The Alexander Report alleges collusive bidding by Intervenors and that Mr. Chisik controls each of the Intervenors. *Compl. Attach. B, Encl. 1.* On August 9, 2005, DoD referred the matter to the Department of Justice (DOJ) as a potential antitrust violation. *Def.'s App.* 12. DoD also included a cover letter to DOJ highlighting a number of factual inaccuracies in the Alexander Report. *Id.* at 13–15.

The GAO decision in the Kola Nut protest was issued June 17, 2005 and this protest was filed September 21, 2005. As of the time of the filing in this Court, the Intervenors have taken significant steps toward implementation of the contracts at issue here. Intervenors have hired employees, transferred employees, shipped equipment, purchased equipment, and arranged for the transfer of records from prior contractors. *Int. Am. Br.* 11–12.

**Jurisdiction and Standard of Review**

■ This Court has jurisdiction over Plaintiffs' post-award bid protest under the Tucker Act, 28 U.S.C. § 1491(b)(1) (2000). In this case, the Plaintiffs seek "the extraordinary relief of an injunction prior to trial." *FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed.Cir.1993). In order to establish a right to such relief, the Plaintiffs must establish:

> 1) that the [Plaintiffs are] likely to succeed on the merits at trial; 2) that [they] will suffer irreparable harm if preliminary relief is not granted; 3) that the balance of the hardships tips in the [Plaintiffs'] favor; and 4) that a preliminary injunction will not be contrary to the public interest.

*Id.* While none of these factors is individually dispositive, the failure to establish any one factor may be sufficient to justify the denial of injunctive relief. *Id.* The balancing of these factors lies in the discretion of the trial court. *Asociacion Colombiana de Exportadores de Flores v. United States,* 916 F.2d 1571, 1578 (Fed.Cir.1990). The Plaintiffs must, however, establish their entitlement to injunctive relief by clear and convincing evidence. *Baird Corp. v. United States,* 1 Cl. Ct. 662, 664 (1983).

**I. Likelihood of Success on the Merits**

The Plaintiffs rely on alleged violations of FAR provisions during the procurement for the contracts at issue in this protest to establish their likelihood of success on the merits. These alleged violations will be addressed in turn. The Plaintiffs' arguments regarding the referral by the DoD to the DOJ will then be addressed.

■ In order to prevail in a bid protest, the Plaintiffs "must show a significant, prejudicial error in the procurement process." *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed.Cir.1999) (citing *Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1581 (Fed.Cir.1996)). The Plaintiffs are not required to establish that "but for" the error they would have gotten the contract. *Id.* (citing *Data Gen. Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed.Cir.1996)). Plaintiffs need only show that "there was a substantial

---

**3.** Knowledge Connections, a Plaintiff here, has filed some of these protests, while the others have been filed by protestors that are not parties here.

chance that [they] would receive an award—that [they were] within the zone of active consideration." *Id.* (quoting *CACI, Inc.-Fed. v. United States,* 719 F.2d 1567, 1574–75 (Fed.Cir.1983)).

### A. DoD's Violation of FAR 3.103–1

■ The first FAR violation, which Defendant and Intervenors admit and the facts clearly establish, is that the DoD failed to insert the contract provisions found in FAR 52.203–2. FAR 3.103–1 requires all "firm-fixed-price" contracts with the government to include the FAR 52.203–2 provisions unless enumerated exceptions apply. None of those exceptions apply here. FAR 52.203–2 inserts provisions for a Certificate of Independent Price Determination (CIPD), which make each signature on the offer a certification that: 1) the offeror determined the price independently and without agreement with any other party; 2) the offeror would not knowingly disclose the prices, directly or indirectly to any other offeror or competitor; and 3) the offeror made no attempt to induce another to submit or not submit an offer. FAR 52.203–2(a)(1)–(3). As previously noted, this language was not included, which resulted in all offerors submitting bids without a CIPD. *Compl.* ¶ 28; *Def.'s Br.* 9–10; *Int. Am. Br.* 8; *Reply* 2. Indeed, the Intervenors did not submit CIPDs for the disputed contracts until September 28, 2005, long after the award of the contracts. *Int.App.* 92–95; *see also Int. Am. Br.* 10; *Reply* 2.

The Defendant asserts that the omission of the certificates was "ministerial" and should not justify setting aside the contracts. *Def.'s Br.* 9, 12. The Intervenors, also disputing the need to set aside the contracts, point out that they have already confirmed, in writing and affidavits under the penalty of perjury, that each provided their own pricing for the contracts. *Int. Am. Br.* 10. Plaintiffs, however, contend that these are mischaracterizations of the issue and that the procurement process itself is at stake in this case. *Reply* 9–10. They further contend that the contracting officer lacked the authority to enter the contract without the CIPD provisions. *Id.; TRO Hr'g Tr.* 8–9. Thus, the Plaintiffs' position is that if the CIPD is not in the contract document, then the contract is void *ab initio.* This takes a jurisdictional analogy into an unreasonable and untenable theory. The Court is not persuaded that the FAR violation at issue here requires the Court to find the contracts void as a matter of law.

The Court does not share Plaintiffs' view that the provisions provide an "easy out" to the government in the event it uncovers collusive bidding before the award. *TRO Hr'g Tr.* 15–16. The CIPD serves to ensure the integrity of the procurement process on several levels. First, it ensures that the offerors are aware that they must not bid collusively *at the time of the submission.* In this case, the Court does not find sufficient evidence to establish the collusion of the parties. Second, if the *offeror* alters or deletes a CIPD provision, FAR 3.103–2 requires a determination by the contracting officer of whether the alteration was intended to restrict competition and, if so, requires the agency take certain steps. 48 C.F.R. § 3.103–2(b). In this case, however, the offerors did not alter or delete any CIPDs because the government forgot to require them. Finally, the CIPD allows a means for the government to find a breach of the contract if, *after the award of the contract,* it becomes evident that there was collusive bidding. The Court does not see the prejudice Plaintiffs allege resulted from the late filing of the CIPDs. If, as Plaintiffs claim, the Intervenors all lied in their CIPDs, then it appears to the Court that they would have been equally willing to lie pre-award as they allegedly were post-award. Therefore, the mere fact that the CIPDs were not included for any offer does not appear to have prejudiced the Plaintiffs in any conceivable way.

### B. DoD's Alleged Violation of FAR 3.104–7

FAR 3.104–7 provides that:

A contracting officer who receives or obtains information of a violation or possible violation of subsection 27(a), (b), (c), or (d) of the Act (see 3.104–3) must determine if the reported violation or possible violation has any impact on the pending award or selection of the contractor.

48 C.F.R. § 3.104–7(a). The Plaintiffs allege that Mr. Chisik obtained "significant" pricing information (the "Worldspan data") in violation of FAR 3.104–7. *Reply* 5. The Defendant and Intervenors do not deny that Mr. Chisik received some information about a competitor, but they dispute the allegation that he obtained any information in violation of the law. According to the Defendant and Intervenors, Mr. Chisik received some pricing information about Manassas Travel, but this was received in the process of unrelated litigation. *Int. Am. Br.* 21–22; *Def.'s Br.* 16–17.

In support of their allegations, Plaintiffs point to the Alexander Report, the referral of the matter to the DOJ as a potential antitrust violation, and the statements of the contracting officer that the bids submitted by the Intervenors were "virtually identical." While the Alexander Report makes numerous allegations of improper conduct by Mr. Chisik, the Court recognizes that the Report is the creation of Alexander Travel—a disappointed bidder for the disputed contracts. Further, the DoD noted that the Alexander Report "contains numerous apparent inaccuracies." *Def.App.* 14. A central allegation of the Alexander Report is that Mr. Chisik "exercises near total control of every aspect of his client agencies' operations, he administers these agencies like one large conglomerate, arranging which agency will bid which price, in which region, and when." *Compl. Att. B Encl. 1* 33. This statement, however, does not appear to reconcile with the findings of the SBA throughout its numerous reviews of Mr. Chisik's involvement with the Intervenors. Although the SBA did not have the Alexander Report, the SBA did provide an impartial review of that issue. According to SBA Region I, "the level of involvement of Mr. Chisik with Alamo Travel does not create power of control of affiliation." *Int. Supp.App.* 99. With regard to AirTrak Travel, Region I also held that Mr. Chisiks' involvement "does not rise to the level of affiliation." *Id.* at 252. SBA Region IV found similarly in a protest regarding Wing-Gate Travel. *Id.* at 10. Finally, SBA Region III also found a lack of control over Ravenel Travel by Mr. Chisik. *Id.* at 184.

The fact that the DoD referred this matter to the DOJ is also not sufficient to justify granting injunctive relief. FAR 3.303 directs the agency to report "suspected" violations of antitrust laws to the DOJ. Further, the GAO became "concerned" after Plaintiffs raised the allegations of collusive bidding in a GAO Protest. *Reply Encl. 6* at 9. Suspicion and concern, however, are hardly standards that the Court can apply in determining whether to grant injunctive relief. The fact that the DoD referred the matter to the DOJ is of little significance because this is not a formal action having any legal consequence. Many administrative systems allow the referral of *any* complaint to some authority. Any person or any agency can refer *any* complaint to a U.S. Attorney or the DOJ. If suspicion and concern were proper thresholds for triggering injunctive relief, that relief would become as common as pigeons in the park. It is a quite substantial leap to conclude that there was collusive bidding based upon the common use of a consultant, especially when the field of consultants in the federal travel arena is small. Indeed, the Court is not alone in this conclusion. As the SBA (Region III) stated, finding offerors affiliated "through the mere use of a common business consultant would no more affiliate the same companies than usage of a common specialized attorney. In this case, Mr. Rike has effectively represented that he, not Mr. Chisik, is in control of [Ravenel Travel]. We find no restrictions in Part 121 of the Code of Federal Regulations which prohibit small businesses from using the services of consultants or advisors." *Int. Supp.App.* 184. Indeed, there is no *per se* prohibition on the common use of consultants in the preparation of proposals. The evidence presented thus far simply does not even come close to the level of proof necessary to justify the extraordinary relief sought in this bid protest.

## II. Remaining Factors

The Court has also considered the remaining factors that Plaintiffs need to establish in order to establish their right to injunctive relief. The Court finds that denying the Plaintiffs injunctive relief will not cause them irreparable harm. The performance of the disputed contracts is still in the earliest of phases and the Court will implement an ex-

pedited schedule to address the merits of Plaintiffs' claims, thus any harm to the Plaintiffs would not be irreparable. *See Cincom Systems, Inc. v. United States,* 37 Fed.Cl. 266, 268 (1997). Given the timing of this filing, the Court finds that the balance of the hardships weigh in favor of the Defendant and Intervenors, who have already begun to implement these contracts. There would be significant disruption and added cost if injunctive relief were granted. Finally, the Court does not find an injunction to be in the public interest in the circumstances of this case. While there was a technical violation of FAR, there is not evidence of collusion sufficient to require the setting aside of these contracts to ensure public trust in the system. Further, during a war, the steady operation of DoD's travel system is certainly in the public interest. As noted, injunctive relief would be a significant hardship for both Defendant and Intervenors, which outweighs any alleged benefit to the public in this case.

### Blue Dot Energy Does Not Compel the Setting Aside of These Contracts

Throughout their filings, Plaintiffs rely upon *Blue Dot Energy Co., Inc. v. United States,* 61 Fed.Cl. 548 (2004), for the proposition that the Court must set aside and rebid the contested contracts.[4] Plaintiffs' reliance on *Blue Dot* is misplaced. *Blue Dot* is a post-award bid protest dealing with a contract to provide waste management services to Fairchild Air Force Base. In that case, however, the Court found that the Air Force knowingly interpreted statutes contrary to law. In reaching its conclusion, the *Blue Dot* Court relies heavily on the fact that the Air Force *knowingly* interpreted both federal and state statutes in a manner inconsistent with law. *Blue Dot,* 61 Fed.Cl. at 549, 554–55, 558. Further, in *Blue Dot,* the Court apparently found that the Air Force's interpretations were intended to use state law to violate federal antitrust laws, creating the threat of monopolistic pricing. *Id.* at 558. In this case, there was clearly a FAR violation. This FAR violation is in no way comparable to the level of conduct the Court found in *Blue Dot* because here there is no evi-

dence that the agency intentionally violated any FAR provision. Therefore, *Blue Dot* does not compel the Court to set aside these contracts and order the agency to rebid them.

### Conclusion

For the reasons set forth above, Plaintiffs have failed to establish by clear and convincing evidence that they are entitled to injunctive relief. Therefore, the Court DENIES the Plaintiffs' motion for preliminary injunctive relief.

**It is so ORDERED.**

---

4. During oral argument on the preliminary injunctive relief, Plaintiffs restated their reliance on this case in particular. *TRO Hr'g Tr.* 34.